IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

AARON ANTHONY FLEMONS                                        PETITIONER

NO. 5:16-CV-365-BRW-BD

WENDY KELLEY, Director,
Arkansas Department of Correction                            RESPONDENT

RECOMMENDED DISPOSITION

I.    **Procedure for Filing Objections**:

This Recommended Disposition ("Recommendation") has been sent to Judge Billy

Roy Wilson. Any party to this suit may file written objections with the Clerk of Court

within fourteen (14) days of filing of the Recommendation. Objections must be specific

and must include the factual or legal basis for the objection. An objection to a factual

finding must identify the finding of fact believed to be wrong and describe the evidence

that supports that belief.

By not objecting, any right to appeal questions of fact may be jeopardized. And, if

no objections are filed, Judge Wilson can adopt this Recommendation without

independently reviewing the record.

II.    **Background**:

On July 6, 2001, Aaron Flemons entered a plea of *nolo contendere* to one count of

possession of cocaine with intent to deliver. *Flemons v. State*, 2016 Ark. 323, 2.  He was

sentenced to seventy-two (72) months' imprisonment and one-hundred-twenty (120)

months' suspended sentence. *Id*. On April 1, 2008, Mr. Flemons entered a plea of *nolo*

*contendere* to a charge of third-degree domestic battery; he was sentenced to twelve (12) months' imprisonment and sixty (60) months' suspended sentence. *Id*. (Docket entry #13-2 at 146) Mr. Flemons served his time in both cases and was released. (*Id*. at 147)

The State filed an amended petition to revoke Mr. Flemons's suspended sentence in both the drug and domestic battery cases, alleging that he made three deliveries of cocaine and one delivery of a counterfeit substance in May, 2011. (*Id*. at 146-49) The State also alleged in June and July of 2011, Mr. Flemons committed two separate offenses of third-degree domestic battery, and in September 2011, left the scene of a personal injury accident and fled apprehension. (*Id*. at 148)

Prior to his revocation proceeding, Mr. Flemons's counsel, Rita Watkins, engaged in plea negotiations with the State. (#13-8 at 195-97) Ms. Wilson presented a global settlement offer to Mr. Flemons that would have resolved the revocation proceedings and the new delivery, battery, and other charges filed against him in 2011. (*Id*. at 195) Mr. Flemons rejected the plea offer. (*Id*. at 150-51, 197)

The Court held a revocation hearing at which the State called several witnesses. (#13-2 at 190-291) An officer testified that a confidential informant had purchased cocaine from Mr. Flemons on several occasions; another officer testified to chasing Mr. Flemons after he fled the scene of a personal injury accident. (*Id*. at 210-30, 245-48) Mr. Flemons called his wife, mother and a pastor to testify in his defense; and he offered his medical records into evidence. (*Id*. at 252-61)

The court revoked Mr. Flemons's suspended sentences and sentenced him to twenty-five (25) years in prison for violating the terms of his suspended sentence in the

drug case and five (5) years in prison for violating the terms of his suspended sentence in the domestic battery case. (#13-2 at 157-60) The Court ordered that the sentences be served consecutively. (*Id*.)

Appellate counsel filed a no-merit brief on direct appeal. (#13-5) Mr. Flemons filed pro se points for reversal. (#13-6) The Arkansas Court of Appeals ordered rebriefing twice, but ultimately affirmed the revocation and sentences. *Flemons v. State*, 2014 Ark. App. 131.

Mr. Flemons filed a timely, pro-se petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 and later filed an amended petition. (#13-8 at 38-47, 61-70) The court held a hearing on the motion but denied the petition in a written order. (*Id*. at 82-84, 98-197) Mr. Flemons appealed, and the Arkansas Supreme Court affirmed. *Flemons v. State*, 2016 Ark. 323 (per curiam).

### III.   <u>Mr. Flemons's Amended Petition</u>:

Initially, Mr. Flemons filed a pro se petition for writ of habeas corpus claiming ineffective assistance of counsel during the revocation proceedings. (#2) After he retained counsel, Mr. Flemons filed an amended petition raising ineffective assistance of counsel for: refusing to allow him to testify at the revocation hearing; inaccurately advising him regarding parole eligibility; failing to investigate, prepare for, and present a defense at the revocation hearing; failing to interview witnesses and present damaging testimony at the hearing; and failing to call Jessica Flemons as a witness at trial or in mitigation. In addition, Mr. Flemons also raises cumulative error. (#21)

IV.    **Respondent Kelley's Response**:

Director Kelley contends that the petition should be denied. (#13, #25) She argues that Mr. Flemons procedurally defaulted his ineffective-assistance-of-counsel claims; and further, that his claims lack merit. (#25 at 4-23) She also argues that Mr. Flemons's claim of cumulative error lacks merit because the Court of Appeals for the Eighth Circuit does not recognize the claim. (#25 at 24)

V.    **Discussion**:

A.    **Procedural Default**

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to every appropriate state court, thereby alerting those courts to the federal nature of his claims and giving those courts an opportunity to pass upon and correct any constitutional errors. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b) and (c). And the petitioner's federal habeas claims must rely on the same factual and legal bases that he raised in the state courts. *Ward v. Norris*, 577 F.3d 925, 935 (8th Cir. 2009) (citation omitted). Claims raised in a federal habeas petition that were not exhausted through state court proceedings are deemed defaulted, even if there is no remaining state court remedy.

On direct appeal, Mr. Flemons's counsel filed a so-called "Anders" or no-merit appeal. See *Anders v. California,* 386 U.S. 738 (1967). Mr. Flemons filed pro se points for reversal, to which the State asserted that the arguments were either barred or lacked merit. *Flemons v. State*, 2014 Ark. App. 131, 1 (2014). The Arkansas Court of Appeals agreed and affirmed. *Id*. at 4-5.

In his amended Rule 37 petition, Mr. Flemons claimed that Ms. Watkins was ineffective: (1) for failing to adequately investigate, move to dismiss, or sever the domestic battery charge; (2) for failing to move to dismiss or, in the alternative, sever the domestic battery charge from the plea negotiations; (3) for failing to communicate the State's plea offer; (4) for failing to request a modification of the illegal sentence; and (5) for failing to make due process arguments based on prosecutorial misconduct and/or vindictiveness during plea negotiations. (#13-8 a 61-69) The trial court held a hearing and denied Mr. Flemons's amended petition in a written order. (#13-8 at 82-84)

Mr. Flemons appealed the trial court's denial of his Rule 37 petition to the Arkansas Supreme Court and raised two points on appeal: (1) trial counsel was ineffective in failing to adequately investigate a plea offer in that she provided incorrect information concerning his parole eligibility; and (2) trial counsel was ineffective for failing to raise due-process violations arising out of prosecutorial misconduct. *Flemons v. Ark.*, 2016 Ark. 323 at 4, 7.

The Arkansas Supreme Court affirmed the trial court's denial of Rule 37 relief. *Id.* 3-9. It found that Mr. Flemons had not obtained a ruling from the trial court on his first point on appeal. *Id.* at 5-7. The Court rejected the second point because it was based on the inaccurate assumption that the prosecutor did not have adequate evidence to prosecute the two battery charges. *Id.* at 7-9.

In the pending petition, Mr. Flemons claims ineffective assistance based on his counsel giving him inaccurate information regarding parole eligibility during plea negotiations. He made this same claim to the Arkansas Supreme Court when he appealed

5

the denial of his Rule 37 petition. *Id.* at 4-7. The Arkansas Supreme Court, however, refused to consider the merits of the claim because Mr. Flemons had failed to obtain a ruling on this claim from the trial court. *Id.* Accordingly, all of Mr. Flemons's claims are procedurally defaulted unless an exception applies.

### B.    Ineffective Assistance of Counsel

The doctrine barring procedurally defaulted claims is not without exception. The Court may address a "substantial claim" of ineffective assistance of counsel at trial if, in the initial collateral review proceeding, Mr. Flemons did not have counsel. *Martinez v. Ryan* 566 U.S. 1, 16 (2012). Mr. Flemons did not have counsel in the initial review proceeding.

To prevail on his ineffective assistance of counsel claims, Mr. Flemons must show: (1) that his trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability that the outcome would have been different but for the substandard performance of trial counsel. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Wiggins v. Smith*, 539 U.S. 510, 534 (quoting *Strickland*, 466 U.S. at 694). Scrutiny of counsel's performance is highly deferential, and the Court applies a strong presumption that counsel's conduct fell within the wide range of reasonable professional judgment. *Kelly v. U.S.*, 819 F.3d 1044, 1047 (2016) (citing *Strickland*, 466 U.S. at 687, 689); see also *Forrest v. Steele*, 764 F.3d 848, 853 (8th Cir. 2014).

In determining whether counsel's performance was deficient, the Court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

      1.    Flemons's right to testify

Mr. Flemons claims his counsel was ineffective for not discussing his right to testify with him and for refusing to honor his request to testify at the revocation hearing.[1] He did not raise this claim in his Rule 37 petition, at his Rule 37 hearing, in his appeal of the denial of his Rule 37 petition, or in the pro se petition he filed here. He now claims, however, that he wanted to testify in his own behalf at his revocation hearing—not only to "present his side of the entire story," but also, to make the court aware of "circumstances of his life and the disabilities from which he suffered," the "medications he had been prescribed," and his "financial problems." (#21 at 7)

Mr. Flemons's claim fails to establish counsel's performance fell below reasonable professional assistance. The State did not seek to revoke Mr. Flemons's suspended sentences on the basis that he allegedly did not comply with mental health treatment, but rather because he had committed several new crimes after his release. Mr. Flemons has not offered any new evidence that he could have offered at the revocation

---

[1] Mr. Flemons could have asserted a claim on direct appeal that he had been denied the right to testify in his own defense. He did not. He procedurally defaulted that claim and the default cannot be excused by *Martinez* which only applies to claims of ineffective assistance of counsel. See *Dansby v. Hobbs*, 766 F.3d 809, 833-34 (8th Cir. 2014) (*Martinez* does not extend to claims of trial error).

hearing that would have countered the State's evidence that he had committed new crimes after his release.

Further, matters concerning trial tactics and strategy are not grounds for post-conviction relief in claims of ineffective assistance of counsel. *Feuget v. State*, 2015 Ark. 43, 7 (citing *Rankin v. State,* 365 Ark. 255, 258 (2006)). It was a matter of trial strategy whether Mr. Flemons should to testify, given that Ms. Watkins had other witnesses available to testify about Mr. Flemons's life circumstances. Mr. Flemons's wife Jessica testified that Mr. Flemons voluntarily sought counseling for his "anger issues." (#13-2 at 232) Ms. Flemons further testified that he went to counseling "a lot" and learned to "control himself." (*Id*. at 233)

Mr. Flemons's mother testified about Mr. Flemons's childhood, including his hyperactive and attention-deficit disorders, and also about his anger issues beginning in third or fourth grade. (*Id*. at 252-54) She testified that Mr. Flemons had attended counseling and had taken medication when he lived with her as an adult. (*Id*. at 254-55) She also testified that Mr. Flemons had not been given a fair chance, because he had not received proper treatment; although he went to see counselors, he "didn't know the right questions to ask" the counselors. (*Id*. at 256)

Mr. Flemons's proposed testimony would have been cumulative to the testimony of his wife and mother, and he suffered no prejudice from his attorney's failure to present cumulative evidence. *Bobby v. Van Hook*, 558 U.S. 4, 12 (2009); see also *Forrest v. Steele*, 764 F.3d 848, 859 (8th Cir. 2014).

Also, it is likely that Ms. Watkins advised Mr. Flemons not to testify because, at the time of the revocation hearing, Mr. Flemons was facing criminal trials on three counts of delivering cocaine, one count of delivering a counterfeit substance, two third-degree domestic-battery charges, and a charge of leaving the scene of an accident. Anything he testified to at his revocation hearing could have been used against him at his criminal trials. Considering all of these circumstances, Mr. Flemons has not established that counsel's performance was deficient.

Mr. Flemons has not established prejudice from his lawyer's decision not to call him to testify. In order to revoke his suspended sentences, the court had to find by a preponderance of the evidence that Mr. Flemons inexcusably failed to comply with *one* condition of his suspended sentence. ARK. CODE ANN. § 16-93-308(d).

Here, a confidential informant and a Fort Smith police officer both testified at the revocation hearing that the informant bought crack cocaine from Mr. Flemons on three separate occasions and that, on the fourth occasion, Mr. Flemons sold the informant a counterfeit substance.[2] (#13-2 at 194-99, 220-222) The court also heard testimony from an officer with the Fort Smith Police Department that Mr. Flemons "split" Ms. Flemons's lip, blackened both of her eyes, and choked her. (*Id*. at 236-37) The court heard testimony

---

[2] A Sebastian County Circuit Court jury later found appellant Aaron Flemons guilty of three counts of delivery of cocaine and one count of delivery of a counterfeit substance, and he received an aggregate sentence of 552 months' imprisonment in the Arkansas Department of Correction. The judgment reflected sentence enhancements for Flemons's habitual-offender status and, for the cocaine delivery charges, proximity to a church or park. The Arkansas Court of Appeals affirmed the judgment. *Flemons v. State*, 2013 Ark. App. 239, 2013 WL 1681775.

that Mr. Flemons hit another woman on the ear and refused entry to the police when they came to speak to him about it. (*Id*. at 239-40) Finally, the Court heard testimony from a State Police Officer that Mr. Flemons fled from State police when he was stopped at a sobriety checkpoint. (*Id*. at 245-48) Mr. Flemons's girlfriend testified that she and her two sons were in the car at the time, and that Mr. Flemons crashed the car into a light pole, breaking her leg. (*Id*. at 241-248)

Finally, the Court notes that Mr. Flemons faced 39 years' imprisonment upon the revocation of his suspended sentences, but was sentenced to only thirty years in prison. *Flemons*, 2016 Ark. at 2. (#13-2 at 191) In spite of Mr. Flemons's complaints, Ms. Watkins was able to achieve favorable results.

There was overwhelming evidence presented supporting the court's revocation of Mr. Flemons's suspended sentences. Mr. Flemons's testimony regarding his disabilities, medications, and financial problems would not have led to a different outcome.

2.      Plea Bargain - Parole Eligibility

Mr. Flemons complains that Ms. Watkins was ineffective for giving him inaccurate advice regarding parole eligibility. Before Mr. Flemons's hearing on the petition to revoke, the prosecutor offered Mr. Flemons a plea deal. The Arkansas Supreme Court described the offer as follows:

> Specifically, the offer was that the prosecution would recommend 25-year sentences on Y-felony drug-delivery charges in three cases, 6-year flat sentences on domestic-battery charges in two cases, and a 6-year flat sentence on a charge of leaving the scene of an injury accident and endangering the welfare of a minor, with all sentences to be concurrent. In addition, the prosecution would withdraw the P[etition] T[o] R[evoke], provided that Flemons entered pleas to all of these new charges.

10

*Flemons*, 2016 Ark. at 4-5. The prosecutor, Barrett Milam, told Ms. Watkins that if the offer was not accepted she would amend the drug-delivery charges to allege that they occurred within 1000 feet of a park. (#13-8 at 196)

Ms. Watkins presented the plea deal to Mr. Flemons. He rejected the offer, through counsel, and countered with 15 years' imprisonment on conspiracy and dismissal of the battery charges. (*Id*. at 197) The State rejected the counter-offer. (*Id*.)

Mr. Flemons alleged in his Rule 37 petition and again in his original habeas petition that counsel inaccurately informed him that he would be subject to serving 100% of the proposed *six-year sentence* on the battery charges if he had pleaded guilty. In his amended petition, he alters this claim to state that he was misinformed that he would have been subject to serving 100% of his *25-year sentence* if he pleaded guilty. This assertion is an inaccurate characterization of Ms. Watkins's testimony at the Rule 37 hearing. Ms. Watkins testified that Mr. Flemons would have had to serve 100% of his sentence, but only in questions related to the six-year sentences on the battery charges, not the 25-year sentence. (*Id*. at 152-54, 156)

Further, the testimony at the Rule 37 hearing from the prosecutor and co-counsel Christina Scherrey, who represented Mr. Flemons in subsequent trials, supported Ms. Watkins's claim that she tried to obtain the plea agreement that Mr. Flemons wanted – one that did not include pleading guilty to the battery charges – but the prosecutor would not agree. (*Id*. at 108, 118, 148, 158-59)

The trial court recognized at the Rule 37 hearing that Mr. Flemons was not prejudiced by his counsel's alleged inaccurate advice about the length of time he would be required to serve, because he repeatedly stated that he would not have accepted any plea deal that required him to plead guilty to the battery charges; such a plea offer was never made. (*Id*.) The Court stated, "[y]ou asked [defense counsel] to try to get you a plea agreement without having to plead to those [battery charges]. All the testimony from every witness so far is that she tried to do that, and the prosecutor refused." (*Id*. at 155) Mr. Flemons has not established prejudice, because the evidence indicates that Mr. Flemons refused the plea agreement because the prosecutor refused to exclude the battery charges, not because he was informed he would have to serve 100% of his sentence on those or any charges.

### 3.    Investigation of Mental Health Issues

Mr. Flemons claims that Ms. Watkins was ineffective because she failed to investigate, prepare for, and present a defense at the revocation hearing. More particularly, Mr. Flemons alleges that counsel did not understand that he suffered from significant mental, emotional, and behavioral "dysfuncions."[3] (#21 at 14)

---

[3] Here, there is no indication that the Court would have ordered a mental evaluation for Mr. Flemons prior to the revocation hearing, even if Ms. Watkins had requested it. Under Arkansas law, "[a] defendant facing revocation must be accorded due process but is not entitled to all trial safeguards available to a person not yet convicted; and the decision whether to provide a psychological evaluation to a revocation defendant, like the decision of entitlement to counsel, is made on a case-by-case basis." *Smith v. State*, 2011 Ark. App. 104, 4 (2011) (citing *Pyland v. State,* 302 Ark. 444, 446-47 (1990) (affirming trial court's denial of defense counsel's request for a mental evaluation of a defendant prior to his revocation hearing based on his medications, hallucinations, and psychiatric care)).

Mr. Flemons must show that there is a reasonable probability that the court's decision would have been different absent counsel's alleged errors. *Flemons v. State*, 2016 Ark. 460, 7 (citing *Sales v. State*, 2014 Ark. 384). "In reviewing an assertion of ineffective assistance of counsel based on failure to investigate, a petitioner must describe how a more searching pretrial investigation would have changed the results of his trial." *Id*. (citing *Wertz v. State*, 2014 Ark. 240). The burden is on Mr. Flemons to provide facts that affirmatively support his claims of prejudice. *Id.*

Mr. Flemons's claim is based on his assertion that Ms. Watkins knew he received social security disability payments but failed to investigate further. He contends that further investigation would have led her to the report of Kathleen Kralick, Ph.D., a consulting physician who examined him on behalf of the Social Security Administration and diagnosed him with "impulse control disorder, cannabis abuse in early remission, personality disorder, and current GAF of 15-25." (#21 at 44)

Ms. Watkins testified that she was aware that Mr. Flemons received social security disability payments and that he attended counseling. (#13-8 at 165-70) Ms. Watkins further testified, however, that prior to the revocation hearing, Mr. Flemons had never behaved in a way that caused her to believe that further mental health examination was necessary to provide for his defense at the revocation hearing. (*Id*. at 172-73, 178-79) She testified that his refusal to agree to any plea deal that involved pleading guilty to the battery charges because he believed he would have to serve 100% of those sentences was evidence that he was competent to participate in his defense. (*Id*. at 174)

13

Ms. Watkins also testified that Mr. Flemons never gave her the name of Dr. Kralick as a potential witness. (*Id*. at 170) Moreover, Mr. Flemons has not met his burden of proving that Dr. Kralick's evaluation would have supported an affirmative defense of mental disease or defect. *Nunn v. State*, 2015 Ark. 394, 4–5 (2015) (a history of psychiatric treatment or addiction is not sufficient to establish the existence of a mental disease or defect).

On the date of Mr. Flemons's revocation hearing, Ms. Watkins moved for a continuance so that she could subpoena two mental-health counselors from Arkansas Counseling and Guidance Center. (#13-2 at 190) The court granted the motion in part. It proceeded with testimony of the witnesses who were present, but held the revocation hearing open until a later date for Ms. Watkins to locate and present the testimony of the counseling center witnesses. When the hearing resumed, Ms. Watkins explained to the court that her investigator was unable to locate the counselors, even after obtaining the continuance. (#13-2 at 263-64)

In lieu of their testimony, Ms. Watkins introduced Mr. Flemons's mental health records from Arkansas Counseling and Guidance Center. (*Id*. at 262-65, 282-91) The records from the counseling center showed that Mr. Flemons had been diagnosed with cannabis abuse, major depressive disorder, intermittent explosive disorder, and antisocial personality disorder. (*Id*. at 284-87)

Although Mr. Flemons refers to the admission of the medical records as a "document dump," he does not offer any alternative means his counsel had for introducing the relevant information into evidence, given that the witnesses he asked his

14

lawyer to find could not be located. Additionally, he does not offer affidavits from those medical sources here so as to allow the Court to see how counsel's failure to call these witnesses might have changed the outcome.

Mr. Flemons also emphasizes that he was found disabled by the Social Security Administration. He attaches the administrative law judge's decision to his amended petition and quotes at length from it. (#21 at 16-17, 41-45) Mr. Flemons does not state, however, how an administrative decision by the Social Security Administration that he was entitled to disability proves that he had a mental disease or defect.[4] *Nunn*, 2015 Ark. at 4. A bald assertion of a history of psychiatric treatment or an addiction is not sufficient to establish the existence of a mental disease or defect. *Id.* at 5; see also *Wheeler v. State*, 2015 Ark. 233, 5 (2015). Mr. Flemons has failed to establish that counsel was ineffective for failing to investigate his alleged mental, emotional, and behavioral impairments.

4.    Failure to Interview Witnesses and Present Damaging Testimony

Mr. Flemons complains that his counsel was ineffective for presenting the testimony of Reverend Alan Maxwell Smith, Mr. Flemons's uncle, and a witness Mr. Flemons suggested be called at the revocation hearing. (#21 at 20-21) Mr. Flemons

---

[4] The legal standard for competency for the purposes of criminal charges and the legal standard to qualify as a "disabled person" for the purposes of Social Security benefits are substantially different. *See* 42 U.S.C. § 423(d)(2)(A) (to qualify for Social Security, a claimant must demonstrate that his mental impairments prevent him, in light of his age, education, and work experience, from obtaining gainful employment). A finding of a legal disability is not enough to create a presumption of incompetence. *Miller v. Minor*, No. 14-0147-CV-W-HFS-P, 2015 WL 1345449, at *4 (W.D. Mo. Mar. 23, 2015).

asserts that Ms. Watkins called Mr. Smith to testify without interviewing him beforehand. (*Id*.)

Ms. Watkins testified at the Rule 37 hearing that she had spoken with Mr. Smith a "little bit" prior to his testimony. (#13-2 at 258) Mr. Smith testified that he had mentored Mr. Flemons when he was first released from prison and that Mr. Flemons was upbeat and talked about changing his life. (*Id*. at 258-59) He testified that Mr. Flemons had "good qualities," and that is was possible that Mr. Flemons could be rehabilitated. (*Id*. at 259-60)

On cross examination, the prosecutor elicited testimony that Mr. Smith was surprised at what Mr. Flemons was charged with, but that the charges did not change his opinion. (*Id*. at 260-61) While Mr. Smith admitted he had not spent much time with Mr. Flemons recently, he stood by his opinion that Mr. Flemons could be rehabilitated. (*Id*. at 258-61)

Ms. Watkins's decision to call Mr. Smith to testify was a strategy to elicit testimony indicating that Mr. Flemons could be rehabilitated. Mr. Flemons has not established that, absent Mr. Smith's testimony, the outcome of the hearing would have been different.

        5.      Failure to Call Jessica Flemons as a Witness

Mr. Flemons complains that Ms. Watkins was ineffective for failing to call his wife Jessica Flemons to testify at trial or as a mitigation witness for sentencing purposes. (#2 at 22) Mr. Flemons claims that, prior to the revocation hearing, Ms. Flemons, one of the domestic battery victims, signed an affidavit stating that Mr. Flemons did not batter

her. He claims that, based on the affidavit, she should have been called to testify in his defense.

The prosecutor, Ms. Milam, testified that Ms. Flemons had given her an affidavit "trying to say that the events didn't happen," but Ms. Milam "didn't believe her." (#13-8 at 105) Ms. Scherrey, who defended Mr. Flemons in some of his other cases, testified that Ms. Flemons had, "signed a document basically recanting any statements that she would have made" to officers stating that Mr. Flemons had battered her. (*Id*. at 125) She believed that the statement was given to the prosecutor. (*Id*. at 126-27)

Ms. Watkins testified that she vaguely remembered that Ms. Flemons had given the prosecutor an affidavit recanting her statement that Mr. Flemons battered her. (*Id*. at 142) She further testified that she did not have the affidavit. (*Id*. at 142-43) She stated that, had she obtained the affidavit, she would not have filed a motion to dismiss the battery charge, because she did not think such a motion would have had merit. (*Id*. at 143-45)

At the revocation hearing, Ms. Flemons testified that she was married to Mr. Flemons and that they had a son together. (#13-2 at 231) She further testified that she and Mr. Flemons had voluntarily gone to counseling together for, "his anger issues" before he was arrested and that she had absolutely noticed a change for the better in Mr. Flemons. (*Id*. at 232)

Ms. Watkins offered testimony that Ms. Flemons believed Mr. Flemons had been rehabilitated without asking Ms. Flemons to recant her earlier story to the police. Officer Randall Patterson had already testified concerning Ms. Flemons's battery and, through

17

him, the prosecution had introduced photographs of Mr. Flemons's injuries. (*Id.* at 236-38, 277-280) In light of Officer Patterson's testimony, it is unlikely an affidavit or further testimony from Ms. Flemons would have changed the outcome of the revocation proceeding, because the domestic battery of Ms. Flemons was one of many violations the prosecution presented evidence about to support revoking Mr. Flemons's suspended sentences. (*Id.* at 194-99, 220-22)

### C.     Cumulative Error

Finally, Mr. Flemons claims he is entitled to habeas relief because of the cumulative errors of his counsel. (#21 at 24-32) Mr. Flemons's claim fails. The Eighth Circuit has held that cumulative error is not grounds for habeas relief. See *Middleton v. Roper,* 455 F.3d 838, 851 (8th Cir. 2006) *cert. denied,* 549 U.S. 1134 (2007) (habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test) (citing *Wainwright v. Lockhart,* 80 F.3d 1226, 1233 (8th Cir.1996) (neither cumulative effect of trial errors nor cumulative effect of attorney errors were grounds for habeas relief)) (other citations omitted)).

## VI.    <u>Certificate of Appealability:</u>

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Flemons has made a substantial showing that he was denied a constitutional right.  28 U.S.C. § 2253(c) (1)-(2). In this case, Mr. Flemons has not provided a basis for the Court

to issue a certificate of appealability. Accordingly, a certificate of appealability should be denied.

**VII.    <u>Conclusion</u>:**

Mr. Flemons has not established a substantial claim of ineffective assistance of counsel, and his claims should be denied as procedurally defaulted.

DATED this 30th day of October, 2017.

_____

UNITED STATES MAGISTRATE JUDGE